Rodríguez de Oronoz, Jueza Ponente
*981 TEXTO COMPLETO DE LA RESOLUCION
La presente petición de certiorari, presentada por el Procurador General de Puerto Rico, solicita la revisión de la Resolución en el caso El Pueblo de Puerto Rico v. Thomas Rivera Schatz, dictada el 9 de enero de 2004, por el Juez Superior, Hon. Carlos A. Cabán García, del Tribunal de Primera Instancia. Mediante la referida Resolución, el Juez Cabán García se inhibió motu proprio de atender la causa penal que se ventila contra el acusado-recurrido, Thomas Rivera Schatz, en el caso de epígrafe.
Por las razones que exponemos a continuación, se deniega la expedición del auto solicitado.
I
Los hechos que dan margen al presente recurso fueron expuestos de la manera siguiente por el Procurador General en la petición de certiorari.
Por hechos ocurridos el 20 de junio de 2002 en la Procuradoría de la Mujer, el señor Thomas Rivera Schatz fue denunciado y posteriormente acusado por el delito de motín. También fueron acusados Carlos I. Pesquera, Leonides Díaz Urbina y Edwin Mundo Ríos. Luego de un sinnúmero de suspensiones y posposiciones por sendos trámites apelativos llevados a cabo por los co-acusados, el juicio se señaló para el 14 de enero de 2004.
Estando pendiente el juicio para su comienzo, el 9 de enero de 2004, el Juez Superior asignado para el juicio, Hon. Carlos A. Cabán García, se inhibió sua sponte de dicha causa penal basado en un parte de prensa en el que se informaba que el acusado-recurrido, licenciado Thomas Rivera Schatz, envió una misiva a la ayudante de la Gobernadora, licenciada Sara Cortés, para que le informara si el juez a cargo del caso de autos había solicitado algún ascenso, ello alegadamente para conocer si su caso se trata de un “juego político”. En el Apéndice del recurso se incluye copia de una noticia publicada en el periódico El Nuevo Día de 9 de enero de 2004, la cual presuntamente motivó la inhibición del juez Cabán García.
En la Resolución que emitiera a esos efectos, el Juez Cabán García expuso lo siguiente:

“El 15 de abril de 2003 fui designado por el entonces Juez Presidente, Hon. José A. Andréu García, para atender en los casos K OP2002-0027 al 0030. Desde el inicio de nuestra gestión hemos dirigido el proceso hasta el presente con absoluta imparcialidad. Al tratarse de un proceso criminal donde está enjuego la libertad de un ciudadano, hemos tomado decisiones dirigidas a garantizarles a todos un juicio justo e imparcial.

En el día de hoy surge de la prensa escrita que el co-acusado, quien también es abogado, Ledo. Thomas Rivera Schatz, indicó en el día de ayer que envió una carta a la Leda. Sara Cortés, ayudante de la Gobernadora a cargo de Nombramientos Judiciales, para que se le informare si el suscribiente había solicitado algún tipo de ascenso en la Judicatura. Añadió el licenciado Rivera, según citado en la prensa, que esta acción es ‘para ver si esto se trata de un juego político ’ El Nuevo Día, 9 de enero de 2004, pág. 39, Primera Hora, 9 de enero de 2004, pág. 24.

Ante las referidas expresiones y a pesar de que no hemos solicitado ascenso alguno dentro de la Judicatura, este magistrado entiende responsablemente que procede su inhibición bajo el inciso (g) del Canon XII de Etica Judicial. Según esta disposición procede la inhibición por cualquier causa que pueda razonablemente arrojar dudas sobre la imparcialidad del magistrado para adjudicar la controversia o que tienda a minar la confianza 
*982
pública en el sistema de justicia. Esta normativa ética responde a que el Juez no solamente ha de ser imparcial, sino que su conducta ha de excluir toda posible apariencia de que es susceptible de actuar a base de influencias de personas, grupos o partidos, o de ser influido por el clamor público por consideraciones de popularidad o notoriedad, o por motivaciones impropias. Canon XI de Etica Judicial. Véase además, Lind Flores v. Cruz Morales, 2003 J.T.S. 154, 239.

El proceso judicial no es gesta deportiva o política, es un proceso de la más alta seriedad donde están en conflicto valores de la mayor jerarquía en nuestra sociedad. Los ataques sin fundamento a los jueces, ya sea de forma directa o indirecta, contribuyen a hacer daño a nuestro sistema de justicia, minando así la fe y la confianza que tiene el pueblo en éste. Corresponde a los tribunales mantener del pueblo en la justicia como valor esencial de la democracia. El Juez... ‘es el árbitro designado por la sociedad, a través del Estado, para juzgar la conducta humana. Y para poder merecer el respeto de la sociedad y el acatamiento de sus decisiones, ha de ser, y ser visto, como un ser humano sin tacha. Ello exige, no solamente ser bueno, sino también parecerlo. ’ Irizarry Yunque, La Etica Judicial, pág. 4, Forum Números 1-4 (1993). ”

Así las cosas, el Procurador General acude a este Tribunal señalando la comisión del siguiente error:

“ABUSO DE SU DISCRECION EL JUEZ SUPERIOR DEL TRIBUNAL DE PRIMERA INSTANCIA, HON. CARLOS A. CABAN GARCIA, AL INHIBIRSE MOTU PROPRIO DE LA CAUSA PENAL QUE SE SIGUE CONTRA EL ACUSADO-RECURRIDO Y OTROS, SIN FUNDAMENTO LEGITIMO PARA ELLO YEN CLARO DETRIMENTO DEL INTERES SOCIAL DE QUE LAS CAUSAS PENALES SE VENTILEN EN LOS MERITOS CON PRONTITUD. ”

II
El Procurador General argumenta en su escrito ante nos que la inhibición sua sponte del Juez Cabán García constituyó un abuso de discreción, ya que: (a) no existe razón legítima alguna que justifique la inhibición, y (b) considerando la etapa avanzada del proceso, de prevalecer la inhibición, se trastocaría la administración de la justicia porque ello conllevaría el fraccionamiento del proceso contra los cuatro (4) imputados de motín por los incidentes ocurridos en la Procuraduría de la Mujer o, en la alternativa, provocaría otra posposición del inicio del juicio, el cual está pautado para comenzar el 14 de enero de 2004.
Aduce, además, el Procurador, que aun asumiendo que el parte de prensa sea correcto, la conducta del acusado Rivera Schatz constituye simplemente un ataque infundado, temerario, especulativo e irresponsable a un miembro de la judicatura de nuestro país, a base de la inferencia incorrecta de que existe un “juego político” cada vez que un juez que ha solicitado una plaza en un tribunal de mayor jerarquía tiene que adjudicar un caso notorio en el cual está involucrado el gobierno.
De entrada, debemos destacar que no estamos ante un caso de descalificación o recusación de un juez, sino ante un caso en que un juez motu proprio se inhibe de continuar presidiendo sobre un proceso. Por ello, sólo resulta relevante examinar los hechos bajo la figura de la inhibición.
Los Cánones de Etica Judicial le imponen al juez o jueza la obligación de que su conducta no solamente sea imparcial, sino que excluya toda posible apariencia de que es susceptible de actuar a base de influencias de personas, grupos o partidos, o de ser incluido por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. (Canon XI). A estos efectos, procede la inhibición de cualquier juez o jueza por cualquier causa que pueda razonablemente arrojar dudas sobre la imparcialidad del magistrado o magistrada para adjudicar la controversia o que tienda a minar la confianza pública en el sistema de justicia. (Canon XII (g)).
Así, pues, la inhibición motu proprio de un juez o jueza puede formularse fundamentada en una de dos *983 situaciones: por cualquier causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar; o por cualquier causa o razón que tienda a minar la confianza pública en el sistema de justicia.
Ciertamente, el hecho de que un juez se encuentre pendiente de renominación, o de nominación a un puesto de superior jerarquía, no implica que deba inhibirse cuando un litigante indaga sobre el particular y se expresa al respecto. Tampoco, como norma general, se considera que artículos de periódicos o editoriales sobre las ejecutorias de un juez son base suficiente para su inhibición voluntaria o mediante solicitud de recusación. 
Como ha señalado la Jueza Presidenta, Hon. Miriam Naveira Merly, bastaría que un periódico comience una investigación o publique artículos sobre cada juez a cargo de un caso para provocar una serie ininterrumpida de inhibiciones o recusaciones. Véase Meléndez Vega v. Caribbean International News, _ D.P.R. _ (2000), 2000 J.T.S. 108.
No obstante, al examinar la procedencia de una inhibición motu proprio, un tribunal revisor debe precisamente valorar la decisión personal de un juez de inhibirse en una causa ante sí. Es cierto que, como norma general, las razones de economía y eficiencia procesal, así como la indebida molestia y opresión a las partes y a los testigos, podrían estar reñidas con el interés público y la sabia administración de la justicia. Pero, en el balance de intereses, cualquier retraso adicional de la fecha del juicio que presumiblemente conlleve la asignación del caso a otro magistrado tiene que ceder ante las poderosas razones expresadas por el juez para inhibirse. No podemos menos que darle deferencia total al proceso mental, moral y anímico del juez.
III
Por las razones antes expuestas, denegamos la expedición del auto de certiorari solicitado.
Adelántese por facsímil y por teléfono y notifíquese de inmediato por la vía ordinaria a las partes y al Hon. Heriberto Sepúlveda, Juez Administrador de la Región Judicial de San Juan y al Hon. Carlos Cabán García, Juez Administrador de la Región Judicial de Humacao.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 2004 DTA 45
1. “Ai a general rule, media articles and editorials, statements attributed to a judge in a media publication, and false and misleading newspaper headlines, standing alone, are generally considered to be incompetent sources on which to base a judicial disqualification motion or a judge’s decision to recuse himself.” Hamm, Richard E., Judicial Disqualification: Recusal and Disqualification of Judges, Little, Brown and Company, 1996, pág. 168.